# EXHIBIT 3

**The Hartford Insurance Group, Inc.**



June 10, 2025

RE:     Insured:   **Chase Real Estate LLC**

        Policy Number:   83 OH 0387133-22

        Policy Term:    5/15/2022 – 5/15/2023

        Writing Company:  Hartford Fire Insurance Co.

This will verify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of the insurance policy referenced above.  Documents and/or information produced herewith are kept and maintained in the ordinary course of business.

_____

Mark Azzolino

Head of Digital Solutions – Global Specialty

| Prior Policy Number: 83 OH 0387133-21<br>Policy Number: 83 OH 0387133-22 | HARTFORD FIRE INSURANCE CO.,<br>HARTFORD PLAZA, HARTFORD, CT 06115<br>A stock insurance company, herein<br>called the Insurer |  |

**THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY INSURANCE POLICY**<sup>SM</sup>
**Real Estate Agents Professional Liability Coverage**

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## PLEASE READ IT CAREFULLY.

**NOTICE: COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND WHICH HAVE BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS. THE RETENTION IS APPLICABLE TO DEFENSE COSTS AND DAMAGES. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

### DECLARATIONS

| | | |
|---|---|---|
| **ITEM 1.** | NAMED ENTITY:<br>ADDRESS: | CHASE REAL ESTATE LLC<br>1903 SPRINGBROOK SQUARE DR<br>NAPERVILLE, IL 60564-5946 |
| **ITEM 2.** | PRODUCER: | 14127<br>TRUNNELL INSURANCE SERVICES LL<br>1300 IROQUOIS AVE SUITE 200<br>NAPERVILLE, IL 60563 |
| **ITEM 3.** | POLICY PERIOD EFFECTIVE FROM (Inception Date): 5/15/2022 TO (Expiration Date):5/15/2023<br>(AT 12:01 A.M. STANDARD TIME AT ADDRESS OF THE NAMED INSURED AS STATED HEREIN.) | |

LIMITS OF LIABILITY

**(A) Professional Liability per claim $1,000,000**

**(B) Personal Injury Liability per claim $1,000,000**

**(C) Personally Identifiable Information Liability per claim $1,000,000**

**Aggregate Limit All Liability Claims $1,000,000**

**Is Defense outside of the Limit of Liability provided** ☐ **yes** ☒ **no**

**Extensions**

**Disciplinary Proceeding Extension $25,000**

**Supplementary payments Extension $25,000**

**Subpoena Assistance extension $25,000**

| | | |
|---|---|---|
| **ITEM 5.** | RETENTION: **$2,500** per **Claim**, including **Damages** and **Defense Costs**. | |
| **ITEM 6.** | | PREMIUM: **$5,434.00** |
| **ITEM 7.** | RETROACTIVE DATE: **5/15/2019** | |

| ITEM 9. | **EXTENDED REPORTING PERIOD** |
|---|---|

| **Number of Years** | **Percentage of Annual Premium** |
|---|---|
| 1 | 100% |
| 3 | 165% |
| 5 | 200% |

**ITEM 10.** ADDRESS FOR NOTICES TO THE INSURER:

FOR CLAIMS:

The Hartford
Hartford Financial Lines
One Hartford Plaza
Hartford, CT 06115

**HFPClaims@thehartford.com**
Fax: (917) 464-6000

FOR ALL NOTICES OTHER THAN CLAIMS:

The Hartford
Hartford Financial Lines
One Hartford Plaza
Hartford, CT 06115

**HFPExpress@thehartford.com**
Fax: (866) 586-4550

**ITEM 11:** ENDORSEMENTS ATTACHED AT EFFECTIVE DATE:

SEE FORM GU207 (SCHEDULE OF ENDORSEMENTS)

**GU207**
**(6-78)**

# ENDORSEMENT

This endorsement, effective on 5/15/22 at 12:01 A.M standard time, forms a part of

Policy No.      83 OH 0387133-22 of the HARTFORD FIRE INSURANCE CO.

Issued to      CHASE REAL ESTATE LLC

*Douglas Elliot*

Douglas Elliot, President

SCHEDULE

|   | | | |
|---|---|---|---|
|   | CP00H00203 | 10/20 | THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY INSURANCE POLICY - DECLARATIONS |
|   | CP00H00300 | 9/18 | THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY POLICY COMMON TERMS AND CONDITIONS |
| 1 | CP00H01800 | 9/18 | FRANCHISE ENDORSEMENT |
| 2 | CP00H70001 | 9/18 | THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY REAL ESTATE AGENT PROFESSIONAL |
| 3 | CP12H00400 | 9/18 | ILLINOIS AMENDATORY ENDORSEMENT |
| 4 | CP12H01000 | 9/18 | ILLINOIS AMENDATORY ENDORSEMENT (COVERAGE PART) |
| 5 | HR12H00101 | 9/11 | ILLINOIS CANCELLATION AND NONRENEWAL ENDORSEMENT |
|   | HR12H00502 | 3/17 | IMPORTANT INFORMATION FOR ILLINOIS POLICYHOLDERS |
|   | HG00H12900 | 10/16 | U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") |
|   | HR00H09300 | 2/07 | PRODUCER COMPENSATION NOTICE |

## The Hartford Premier Choice Professional Liability Policy

## COMMON TERMS AND CONDITIONS

**NOTICE: THE LIABILITY COVERAGE PART PROVIDES CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

**I.  TERMS AND CONDITIONS**

**(A)** All Coverage Parts included in this Policy are subject to the following Common Terms and Conditions. If any provision in these Common Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**(B)** Except as otherwise provided by specific reference to other Coverage Parts, the terms and conditions of each Coverage Part shall apply only to such Coverage Part.

**II.  COMMON DEFINITIONS**

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Affiliate"** means any insurance company controlling, controlled by or under common control with the Insurer.
- **"Application"** means the application for this Policy, including any (i) materials or written information submitted therewith or made available to the Insurer during the underwriting process, or (ii) warranty, representation or other written statement provided to the Insurer, which application shall be on file with the Insurer. Such **Application** shall be deemed a part of this Policy and attached hereto. In addition, Application includes any warranty, representation or other statement provided to us in connection with any policy of which this Policy is a renewal or replacement.
- **"Claim"** shall have the meaning specified for such term in each Coverage Part.
- **"Damages"** shall have the meaning specified for such term in each Coverage Part.
- **"Defense Costs"** means:

  **(1)** reasonable legal fees and expenses, including, but not limited to, e-discovery expenses, incurred in the defense or appeal of a **Claim**;

  **(2)** the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds.

  However, **Defense Costs** shall not include:

  **(a)** salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds**;

  **(b)** any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered **Insured**; or

  **(c)** any fees, expenses or costs which were incurred prior to the date on which the Insurer received written notice of **Claim** from the **Insured**.

- **"Domestic Partner"** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or any domestic partner relationship arrangement recognized outside of the U.S. and under the Human Resource policy of the **Insured Entity**.
- **"Effective Time"** means the actual time that a transaction is legally consummated as evidenced by the controlling documents of the transaction, including but not limited to the purchase and sale agreement, merger agreement, partnership agreement, or trust agreement.
- **"Employee"** means any natural person who was, is or shall become a(n):

  (1) employee of an **Insured Entity** including any full time, part time, seasonal, temporary, leased, or loaned employee; or

  (2) volunteer or intern with an **Insured Entity**.

- **"Insured Entity"** means:

  (1) the **Named Entity;** or

  (2) any **Subsidiary**.

- **"Insured Person"** shall have the meaning specified for such term in each Coverage Part.
- **"Insureds"** shall have the meaning specified for such term in each Coverage Part.
- **"Interrelated Wrongful Acts"** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, or transaction, or series of causally connected facts, circumstances, situations, events, or transactions.
- **"Liability Coverage Part"** means any liability coverage parts, included in the policy.
- **"Loss"** means **Defense Costs** and **Damages**.
- **"Named Entity"** means the entity named in Item 1 of the Declarations.
- **"Policy Period"** means the period from the Inception Date to the Expiration Date set forth in Item 3 of the Declarations or any earlier cancellation date.
- **"Pollutants"** means any solid, liquid, gaseous or thermal irritant, nuisance or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil product, radiation, asbestos or asbestos-containing product, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. **Pollutants** also means any substance located anywhere in the world identified on any applicable list of hazardous substances issued by any federal agency (including, nonexclusively, the Environmental Protection Agency) or any state, county, municipality or locality or counterpart thereof, or any foreign equivalent thereof.
- **"Subsidiary"** means any:

  (1) corporation in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

  (2) limited liability company in which and so long as the **Named Entity** owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managing members;

  (3) corporation operated as a joint venture in which and so long as the **Named Entity** owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Named Entity** solely controls the management and operation of such corporation.

- **"Wrongful Act"** shall have the meaning specified for such term in each Coverage Part.

## III. COVERAGE EXTENSIONS

### (A) Spousal/Domestic Partner Liability Coverage

Coverage shall apply to the lawful spouse or **Domestic Partner** of an **Insured Person** for a **Claim** made against such spouse or **Domestic Partner**, provided that:

**(1)** such **Claim** arises solely out of:

    **(a)** such person's status as the spouse or **Domestic Partner** of an **Insured Person;** or

    **(b)** such spouse or **Domestic Partner's** ownership of property sought as recovery for a **Wrongful Act**;

**(2)** the **Insured Person** is named and maintained in such **Claim** together with the spouse or **Domestic Partner**; and

**(3)** coverage of the spouse or **Domestic Partner** shall be on the same terms and conditions, including any applicable Retention, as apply to coverage of the **Insured Person** for such **Claim**.

No coverage shall apply to any **Claim** for a **Wrongful Act** of such spouse or **Domestic Partner**.

**(B) Estates and Legal Representatives**

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** shall be deemed to be a **Claim** made against such **Insured Person**. No coverage shall apply to any **Claim** for a **Wrongful Act** of such estate, heirs, legal representatives or assigns.

## IV.  LIMIT OF LIABILITY

**(A)** The Limit of Liability for each **Liability Coverage Part** in ITEM 4 of the Declarations shall be the maximum aggregate amount that the Insurer shall pay under such Coverage Part for all **Loss** from all **Claims** covered under such Coverage Part.

**(B)** If any Limit of Liability or Limit of Insurance is exhausted, the premium for this Policy shall be deemed fully earned.

## V.  DEFENSE COSTS

Solely with respect to all **Liability Coverage Parts:**

**(A) Defense Costs** shall be part of, and not in addition to, each applicable Limit of Liability.  Payment of **Defense Costs** by the Insurer shall reduce each Limit of Liability.

**(B)** Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 4of the Declarations, then payment of **Defense Costs** shall be in addition to such applicable Limit of Liability.

## IV.  RETENTION

Solely with respect to all **Liability Coverage Parts:**

**(A)** The Insurer shall pay **Loss** in excess of the Retention applicable to each **Claim** as specified in ITEM 5 of the Declarations.

**(B)** All Retentions shall be borne by the **Insureds** at their own risk.

**(C)** The Retention shall apply to **Defense Costs** and **Damages** covered under this Policy. If, any **Defense Costs** or **Damages** are incurred by the Insurer prior to the **Insured's** complete payment of the Retention, then the **Insureds** shall reimburse the Insurer therefor upon request**.**

**(D)** If a **Claim** is covered under more than one Coverage Part, the applicable Retention for each Coverage Part shall be applied separately to such **Claim**, provided that the maximum Retention applied to such **Claim** shall not exceed the highest of such applicable Retentions.

**(E)** If the **Insured**, with the approval of the Insurer resolves a covered **Claim** through binding arbitration, non-court ordered mediation, or other similar alternative dispute resolution process, the applicable retention amount will be reduced by 50% up to a maximum of $25,000.

## VII. DEFENSE AND SETTLEMENT

Solely with respect to all **Liability Coverage Parts:**

**(A)** The Insurer shall have the right and duty to defend **Claims** covered under the Policy, even if such **Claim** is groundless, false or fraudulent, provided that the Insureds give notice to the Insurer in accordance with the applicable **Liability Coverage Parts'** notice provisions.

**(B)** If the Insurer has the duty to defend a **Claim**, the Insurer's duty to defend such **Claim** shall cease upon exhaustion of any applicable Limit of Liability.

**(C)** The **Insureds** shall not admit or assume any liability, make any settlement offer or enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** regarding any **Claim** without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, settlement offer or agreement, stipulation, or **Defense Costs** to which it has not consented.

**(D)** The Insurer shall have the right to associate itself in the defense and settlement of any **Claim** that appears reasonably likely to involve this Policy. The Insurer may make any investigation it deems appropriate in connection with any **Claim**. The Insurer may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the Insurer deems reasonable. The **Insured's** consent shall not be unreasonably withheld.

**(E)** Notwithstanding the above, the Insurer may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the Insurer deems reasonable. However, if an **Insured** fails or refuses to consent to the settlement of a **Claim** as recommended by the Insurer and acceptable to a claimant, then:

  **(1)** the Insurer's duty to defend such **Claim**, if any, shall cease; and

  **(2)** subject to the applicable Limit of Liability, the Insurer's maximum liability for such **Claim** shall be limited to the sum of:

    **(a)** **Defense Costs** incurred up until such failure or refusal; plus

    **(b)** 50% of **Defense Costs** incurred after such failure or refusal; plus

    **(c)** **Loss** other than **Defense Costs** incurred to resolve such **Claim,** provided that if such amount exceeds the settlement amount recommended by the Insurer that the Insurer shall only be liable for 80% of the amount of such **Loss** in excess of such settlement amount.

**(F)** The **Insureds** shall give to the Insurer all information and cooperation as the Insurer may reasonably request. However, if the Insurer is, in its sole discretion, able to determine coverage for cooperating **Insureds**, the failure of one **Insured Person** to cooperate with the Insurer shall not impact coverage provided to cooperating **Insureds.**

## VIII. MINIMUM STANDARDS

In the event that there is an inconsistency between:

**(A)** the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Policy): and

**(B)** any other term or condition of this Policy:

it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of (A) or (B) above that are more favorable to the **Insured.**

## IX. EXTENDED REPORTING PERIOD

Solely with respect to all **Liability Coverage Parts:**

**(A)** If any **Liability Coverage Part** is cancelled or non-renewed for any reason other than non-payment of premium, the **Insureds** shall have the right to elect an extension of time to report **Claims** under such **Liability Coverage Part** (the "Extended Reporting Period").

**(B)** To elect the Extended Reporting Period, the **Insureds** shall send a written notice of election of the Extended Reporting Period to the Insurer together with the premium therefor. The right to elect the Extended Reporting Period shall end unless the Insurer receives such notice and premium within sixty (60) days of cancellation or non-renewal. There shall be no right to elect the Extended Reporting Period after such time.

**(C)** The premium for the Extended Reporting Period shall be that percentage specified in ITEM 9 of the Declarations of the sum of the original annual premium plus the annualized amount of any additional premium charged by the Insurer during the **Policy Period**. Such premium shall be deemed fully earned at the inception of the Extended Reporting Period.

**(D)** The Extended Reporting Period shall be for the duration specified in the Declarations following the end of the **Policy Period**.

**(E)** Coverage during the Extended Reporting Period shall apply to **Claims** made during the Extended Reporting Period for **Wrongful Acts** occurring prior to the earlier of the end of the **Policy Period** or the time of any transaction described in **Section XIV. CHANGES IN EXPOSURE, (C) Takeover of Named Entity.** No coverage shall apply for any **Wrongful Act** occurring after such time.

**(F)** There is no separate or additional Limit of Liability for any Extended Reporting Period.

**(G)** If during the Extended Reporting Period the **Insureds** first become aware of a **Wrongful Act** which occurred on or subsequent to any applicable **Retroactive Date** that may reasonably be expected to give rise to a **Claim**, and if written notice of such **Wrongful Act** is given to the Insurer during the Extended Reporting Period, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently made which arises from such **Wrongful Act** shall be deemed to be a **Claim** first made during the Extended Reporting Period, and therefore subject to the terms and conditions of this Policy, including, without limitation, **Section VII., DEFENSE AND SETTLEMENT** of these Common Terms and Conditions and the reporting requirements set forth in the NOTICE OF CLAIM found in the applicable **Liability Coverage Part**, on the date that the Insurer receives the above notice.

**(H)** Retiree extended reporting period for a sole proprietor

If you are a sole proprietor and have been continuously insured for professional liability coverage with a member of the Hartford Financial Services Group, Inc. group of companies for three or more full consecutive years, an unlimited extended reporting period will be provided without additional charge if you:

**(1)** Cancel or fail to renew this policy due to your retirement from the accounting profession within the policy period; and

**(2)** Cease the performance of all professional accounting services covered by this policy; and

**(3)** Are fifty-five (55) years of age or older:

**(4)** You must notify us in writing if this coverage is desired within sixty (60) days after the termination of the policy. This retirement extended reporting period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

## X. INTERRELATIONSHIP OF CLAIMS

Solely with respect to all **Liability Coverage Parts:**

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

**(A)** any of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period;**

**(B)** notice of any **Wrongful Act** described above was given to the Insurer under this Policy pursuant to the section titled NOTICE OF CLAIM found in the applicable **Liability Coverage Part**; or

**(C)** notice of any **Wrongful Act** described above was given under any prior management liability, professional liability or errors and omissions insurance policy if such notice is accepted under such other policy.

## XI. ALLOCATION

With respect to all **Liability Coverage Parts:**

Where **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

**(A)** with respect to a covered **Claim** for which the Insurer has the duty to defend:

    **(1)** 100% of the **Insured's Defense Costs** shall be allocated to covered **Loss**; and

    **(2)** All other **Loss** shall be allocated between covered **Loss** and non-covered loss based upon the relative legal exposure of all parties to such matters.

## XII. OTHER INSURANCE

If **Loss** arising from any **Claim** is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number. Any payments made under any such policy(ies) will serve to offset any applicable retention amounts set forth in the Declarations.

## XIII. CANCELLATION

**(A)** The Insurer may cancel this Policy for non-payment of premium by sending not less than 10 days notice to the **Named Entity**. This Policy may not otherwise be cancelled by the Insurer.

**(B)** Except as provided in **Section XIV. CHANGES IN EXPOSURE, (C) Takeover of Named Entity,** the **Insureds** may cancel this Policy by sending written notice of cancellation to the Insurer. Such notice shall be effective upon receipt by the Insurer unless a later cancellation time is specified therein.

**(C)** If the Insurer cancels this Policy, unearned premium shall be calculated on a pro rata basis. If the **Insureds** cancel this Policy, unearned premium shall be calculated at the Insurer's customary short rates. Payment of any unearned premium shall not be a condition precedent to the effectiveness of a cancellation. The Insurer shall make payment of any unearned premium which it received from the **Insured** as soon as practicable.

## XIV. CHANGES IN EXPOSURE

Solely with respect to all **Liability Coverage Parts:**

**(A) Acquisitions or Created Subsidiaries**

If, before or during the **Policy Period**, any **Insured Entity** acquires or creates a **Subsidiary,** then such acquired or created entity and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring after the **Effective Time** of such acquisition or creation. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before the **Effective Time** of such acquisition or creation, or for any **Interrelated Wrongful Acts** thereto.

However, if the fair value of the assets of any such acquired or created entity exceed 35% of the total assets of the **Named Entity** as reflected in its most recent consolidated financial statements prior to the **Effective Time** of such acquisition or creation, then the **Insureds** shall give the Insurer written notice and full, written details of the acquisition or creation as soon as practicable:

**(1)** prior to the expiration or termination date of this Policy; or

**(2)** within ninety (90) days of such acquisition or creation;

whichever date is later.

There shall be no coverage under any renewal or replacement of this Policy for any such new **Subsidiary** and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, unless the **Insureds** comply with the terms of this provision.

**(B) Mergers**

If, before or during the **Policy Period**, any **Insured Entity** merges with another entity such that the **Insured Entity** is the surviving entity, then such merged entity and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring after such merger. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before the **Effective Time** of such merger or for any **Interrelated Wrongful Acts** thereto.

However, if the fair value of the assets of any newly merged entity exceed 35% of the total assets of the **Named Entity** as reflected in its most recent consolidated financial statements prior to such merger, then the **Insureds** shall give the Insurer written notice and full, written details of the merger as soon as practicable:

**(1)** prior to the expiration or termination date of this Policy; or

**(2)** within ninety (90) days of such merger;

whichever date is later.

There shall be no coverage under any renewal or replacement of this Policy for any newly merged entity or any of its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, unless the **Insureds** comply with the terms of this provision.

**(C) Takeover of Named Entity**

If, before or during the **Policy Period**:

**(1)** the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

**(2)** more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

then coverage shall continue under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring before the **Effective Time** of any such transaction. No coverage shall be available for any **Wrongful Act** occurring after the **Effective Time** of such transaction. Upon such transaction, this Policy shall not be cancelled and the entire premium for this Policy shall be deemed fully earned. The Insured shall give the Insurer written notice and full, written details of such transaction as soon as practicable if any transaction described herein occurs, then the Insurer will not be obligated to offer any renewal or replacement of this Policy.

**(D) Loss of Subsidiary Status**

If, before or during the **Policy Period**, any entity ceases to be a **Subsidiary**, then coverage shall be available under the **Liability Coverage Parts** for such **Subsidiary** and its **Insured Persons**, but only for a **Wrongful Act** of such **Insureds** occurring before the **Effective Time** of such transaction. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after the **Effective Time** such transaction.

## XV. SUBROGATION

**(A)** The Insurer shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** by the Insurer under this Policy. The **Insureds** shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable the Insurer to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the Insurer's position or any potential or actual rights of recovery.

**(B)** Solely with respect to all **Liability Coverage Parts,** the Insurer shall not exercise its rights of subrogation against an **Insured Person** under this Policy unless such **Insured Person** has:

**(1)** obtained any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled; or

**(2)** committed a criminal or deliberately fraudulent act or omission or any willful violation of law,

if a judgment or other final non appealable adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

## XVI. APPLICATION

**(A)** The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

**(B)** If the **Application** contains misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:

**(1)** no coverage shall be afforded under this Policy for any **Insureds** who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**

**(2)** knowledge possessed by any principal, partner, chief executive officer, chief operating officer, general counsel, chief financial officer, risk manager, human resources director or any position equivalent to the foregoing of the an **Insured Entity**, or anyone signing the Application, shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

## XVII. ACTION AGAINST THE INSURER

**(A)** Solely with respect to all **Liability Coverage Parts:**

**(1)** No action shall be taken against the Insurer unless there shall have been full compliance with all the terms and conditions of this Policy.

**(2)** No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** nor shall the Insurer be impleaded by the **Insureds** in any such **Claim**.

## XVIII. ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer without its consent as specified in a written endorsement issued by the Insurer to form a part of this Policy.

## XIX. BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any **Insureds** shall not relieve the Insurer of any of its obligations under this Policy.

## XX. AUTHORIZATION OF NAMED ENTITY

The **Named Entity** shall act on behalf of all **Insureds** with respect to all matters under this Policy, including, without limitation, giving and receiving of notices regarding **Claims**, cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Policy.

## XXI. CHANGES

This Policy shall not be changed or modified except in a written endorsement issued by the Insurer to form a part of this Policy.

## XXII. ENTIRE AGREEMENT

This Policy, including the Declarations, Common Terms and Conditions, included Coverage Part(s), **Application** and any written endorsements attached hereto, constitute the entire agreement between the **Insureds** and the Insurer relating to this insurance.

## XXIII. NOTICE ADDRESSES

**(A)** All notices to the **Insureds** shall be sent to the **Named Entity** at the address specified in Item 1 of the Declarations.

**(B)** All notices to the Insurer shall be sent to the address specified in Item 10 of the Declarations. Any such notice shall be effective upon receipt by the Insurer at such address.

## XXIV. HEADINGS

The headings of the various sections of this Policy are intended for reference only and shall not be part of the terms and conditions of coverage.

## XXV. REFERENCES TO LAWS

**(A)** Wherever this Policy mentions any law, including, without limitation, any statute, Act or Code of the U.S., such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

**(B)** Wherever this Policy mentions any law or laws, including, without limitation, any statute, Act or Code of the U.S., and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes.

## XXVI. COVERAGE TERRITORY

Coverage under this Policy applies worldwide.

**ENDORSEMENT NO:**1

**This endorsement, effective 12:01 am,** 5/15/22                              forms part
**of policy number**     83 OH 0387133-22

**issued to:**          CHASE REAL ESTATE LLC

**by:**                 HARTFORD FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FRANCHISE ENDORSEMENT

This endorsement modifies insurance provided under:

**THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY INSURANCE POLICY**[SM]

This insurance applies to the liability of others assumed by you under a franchise agreement, but only for liability arising out of a **Professional Services Wrongful Act** in the rendering or failure to render a **Professional Service**.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

CP 00 H018 00 0918                          © 2018, The Hartford                          Page 1 of 1

# The Hartford Premier Choice Professional Liability Policy

**NOTICE**: THIS LIABILITY COVERAGE PART PROVIDES CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

---

## REAL ESTATE AGENT PROFESSIONAL LIABILITY COVERAGE PART

### I.  INSURING AGREEMENTS

#### (A) Professional Liability

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Professional Services Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Professional Services Wrongful Act** (which occurred subsequent to the **Retroactive Date**) by the **Insureds** or by any person for whose **Professional Services Wrongful Acts** the **Insureds** are legally responsible.

#### (B) Personal Injury Liability

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Personal Injury Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Personal Injury Wrongful Act** (which occurred subsequent to the **Retroactive Date)** by the **Insureds** or by any person for whose **Personal Injury Wrongful Acts** the **Insureds** are legally responsible; or

#### (C) Personally Identifiable Information Liability

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Personally Identifiable Information Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Personally Identifiable Information Wrongful Act** (which occurred subsequent to the **Retroactive Date)** by the **Insureds** or by any person for whose **Personally Identifiable Information Wrongful Acts** the **Insureds** are legally responsible.

### II.  EXTENSIONS

#### (A) Disciplinary Proceedings Coverage

Notwithstanding any other provisions of this Policy, but subject to all terms and conditions of this Policy, we shall pay **Defense Costs** (but not **Damages**) incurred for defending a proceeding first brought against an **Insured** during the **Policy Period** before a regulatory or governmental disciplinary official or agency alleging professional misconduct in the rendering of or failure to render **Professional Services** up to a maximum payment by us, regardless of the number of proceedings brought by a regulatory or disciplinary official or agency, of $25,000 per **Policy Period**. This amount will not be included within (and shall not serve to reduce) the Limits of Liability and is not subject to any retention obligation of the **Insured**. In order to receive coverage under this provision, the **Insured** must give us written notice within thirty (30) days of receipt of any regulatory or disciplinary allegation made against any **Insured** and said receipt must occur after the Inception Date of this policy.

#### (B) Supplementary Payments

Notwithstanding any other provisions of this Policy, but subject to all terms and conditions of this Policy, we shall pay reasonable and necessary non **Defense Cost** expenses incurred with our prior written consent by an **Insured** in the investigation or litigation of any **Claim**, including actual loss of earnings up to $500 a day for each **Insured**

because of time off from work, subject to a limit of $10,000 for each **Insured Person** and subject to a maximum limit of $25,000 per **Policy Period**. This amount will not be included within (and shall not reduce) the Limits of Liability.

**(C) Subpoena Assistance Coverage**

If during the **Policy Period** the **Insured** receives a subpoena for documents or testimony as a fact witness arising from a **Professional Services Wrongful Act** which occurred on or after the **Retroactive Date** and the **Insured** requests our assistance then we will appoint an attorney to represent the **Insured** regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at their deposition provided that:

- The subpoena arises out of a lawsuit to which the **Insured** is not a party and
- The **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit and the **Insured** has not been engaged to provide such advice or testimony in the past

Regardless of the number of subpoenas received or the number of individuals receiving subpoenas, the maximum limit for this coverage is $25,000 per **Policy Period**. This amount will not be included in (and shall not serve to reduce) the Limits of Liability.

## III. DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Client Entity(ies)"** means any individual, partnership, corporation or limited liability company, other than those that qualify as **Insureds** under this Policy, to whom the **Insured** provides **Professional Services** for a fee.
- **"Claim"** means any **Professional Services Claim, Personal Injury Claim** or any **Personally Identifiable Information Claim.**
- **"Computer System(s)"** means the following if leased or owned by **Insured, Client Entity(ies)** or operated on their behalf by a third party service provider: computers, input and output devices, network devices and equipment, peripheral devices, storage devices, back-up facilities, mobile devices, and associated computer programs, software and applications, including cloud-based computer programs, software and applications.
- **"Damages"** means the amounts, other than **Defense Costs**, that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including:

  **(1)** compensatory damages;

  **(2)** settlement amounts;

  **(3)** pre- and post-judgment interest;

  **(4)** costs awarded pursuant to judgments;

  **(5)** punitive and exemplary damages;

  **(6)** the multiple portion of any multiplied damage award;

  **(7)** claimant's attorney fees awarded by a court.

  However, **Damages** shall not include:

  **(a)** taxes, fines or penalties imposed by law;

  **(b)** equitable, injunctive or other non-monetary relief;

  **(c)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

**(d)** any restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an **Insured** for **Professional Services**

- **"Insured Person"** means any:

    **(1)** any person who was, is now, or hereafter becomes principal, partner, officer, director, employee, or principal shareholder of the **Insured Entity,** but only if such person was performing **Professional Services** on behalf of an **Insured Entity** at the time of the alleged **Wrongful Act** or **Personal Injury**;

    **(2)** any independent contractor but only if such person was performing **Professional Services** on behalf of an **Insured Entity** at the time of the alleged **Wrongful Act** or **Personal Injury**.

- **"Insured(s)"** means any:

    **(1)** **Insured Entity**;

    **(2)** **Insured Person**;

    **(3)** any **Predecessor Firm(s)** provided a request for such coverage is made to us and approved in writing by us prior to the inception of such coverage.

- "**Lockbox Damage**" means property damage arising out of the use, operation, maintenance or distribution of a lockbox or keyless entry system on a property not owned, occupied by or leased to an **Insured**.

- "**Open House Damage**" means damage arising out of an advertised designated time period (up to 3 hours) where multiple potential buyers have the opportunity to view the specified property that is listed for sale by the **Insured** while in the care, custody or control of the **Insured**.

- **"Personal Injury"** means injury, other than bodily injury, arising out of one or more of the following actual or alleged acts, errors or omissions committed in the performance or failure to perform **Professional Services**:

    **(1)** false arrest, detention or imprisonment;

    **(2)** abuse of process or malicious prosecution;

    **(3)** wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

    **(4)** the publication or utterance of a libel or slander or other defamatory or disparaging material; or publication or utterance in violation of an individual's right of privacy; or use of the name or likeness of a person in violation of an individual's right to publicity.

- **"Personal Injury Claim"** means:

    **(1)** a written demand seeking monetary damages or other civil non-monetary relief against an **Insured** for a **Personal Injury Wrongful Act**;

    **(2)** a civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an **Insured** for a **Personal Injury Wrongful Act**; or

    **(3)** a request received by an **Insured** to toll or waive the statute of limitations or other bars against the filing or maintenance of a lawsuit or arbitration proceeding seeking Damages against, or services from, an **Insured**.

- **"Personal Injury Wrongful Act"** means an actual or alleged negligent act, error or omission committed in the performance of or the failure to perform **Professional Services**.

- **"Predecessor Firm"** means any firm disclosed to us which has undergone dissolution and to who's financial assets and liabilities the **Named Entity** is the majority successor in interest provided such firm is listed in the Predecessor Firm Endorsement attached to this Policy.

- **"Professional Services"** means **Real Estate Services** performed by the **Insured**, in the ordinary conduct of its profession, for **Client Entity(ies)** for a fee.
- **"Professional Services Claim"** means:

  **(1)** a written demand seeking monetary damages or other civil non-monetary relief against an **Insured** for a **Professional Services Wrongful Act**;

  **(2)** a civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an **Insured** for a **Professional Services Wrongful Act; or**

  **(3)** a request received by an **Insured** to toll or waive the statute of limitations or other bars against the filing or maintenance of a lawsuit or arbitration proceeding seeking **Damages** against, or services from, an **Insured**.

- **"Professional Services Wrongful Act"** means an actual or alleged negligent act, error or omission in the performance of or the failure to perform **Professional Services. Professional Services Wrongful Act** does not include a **Personal Injury Wrongful Act** or a **Personally Identifiable Information Wrongful Act.**
- **Real Estate Services** means services performed by you or on your behalf for others as a real estate agent, real estate broker, real estate salesperson, real estate personal assistant, real estate independent contractor, real estate consultant or counselor, real estate leasing agent, short-term escrow agent or auctioneer of real property. **Real Estate Services** also includes services performed by you or on your behalf for others as a notary public or member of a formal real estate accreditation, real estate standards review or similar real estate board or committee.
- **"Retroactive Date"** means the date specified in the Declarations, or in any endorsement attached to this Policy, on or after which the **Wrongful Act** must have occurred in order for any **Claim** or any notification given to us pursuant to **V. NOTICE OF CLAIM** to be covered under this Policy.
- **"Personally Identifiable Information"** means the personally identifiable information (as personally identifiable information is defined by applicable law or regulation) of a **Client Entity(ies).**
- **"Personally Identifiable Information Claim"** means:

  **(1)** a written demand seeking monetary damages or other civil non-monetary relief against an **Insured**;

  **(2)** a civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an **Insured** or

  **(3)** a request received by an **Insured** to toll or waive the statute of limitations or other bars against the filing or maintenance of a lawsuit or arbitration proceeding seeking **Damages** against, or services from, an **Insured**.

- **"Personally Identifiable Information Wrongful Act"** means an actual or alleged negligent failure to safeguard the personally identifiable information of a **Client Entity(ies),** which is in the possession of the **Insured,** committed in the performance of or the failure to perform **Professional Services**.

- **"Wrongful Act"** means any actual or alleged:

  **(1) Professional Services Wrongful Act**

  **(2) Personal Injury Wrongful Act**

  **(3) Personally Identifiable Information Wrongful Act**

## IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss:**

  **(1)** In connection with any **Claim** based upon, arising from, or in any way related to any:

  **(a)** discharge, dispersal, release, or escape of **Pollutants**, or any threat of such discharge, dispersal, release or escape; or

**(b)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

**(2)** In connection with any **Claim** based upon, arising from, or in any way related to any prior or pending written demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in ITEM 8 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(3)** In connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance or situation that, before the Inception Date in ITEM 3 of the Declarations, was the subject of any notice given under any other errors and omissions, professional liability or cyber liability insurance policy of which this **Liability Coverage Part** is a direct or indirect renewal or replacement;

**(4)** In connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed under any contract or agreement, including any warranty or guarantee, provided that this exclusion shall not apply to liability:

**(a)** that would have been incurred in the absence of such contract or agreement; or

**(b)** **Claims** alleging negligent performance of **Professional Services.**;

**(5)** Of an **Insured**, based upon, arising from, or in any way related to

**(a)** the gaining of any personal profit, remuneration or financial advantage to which such **Insured** is not legally entitled if a judgment or other non-appealable final adjudication in the underlying action establishes that such a gain did occur;

**(b)** of an **Insured**, based upon, arising from, or in any way related to any intentional **Wrongful Ac**t or any deliberately fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other non-appealable final adjudication in the underlying action establishes such an act, omission or violation; or

**(c)** in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged criminal acts or actions.

**(3)** In connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance or situation that, before the Inception Date in ITEM 3 of the Declarations, was the subject of any notice given under any other errors and omissions, professional liability or cyber liability insurance policy of which this **Liability Coverage Part** is a direct or indirect renewal or replacement;

**(6)** In connection with any **Claim** made, directly or indirectly, by or on behalf of, or with the assistance of, a former or present **Insured**.

**(7)** In connection with any **Claim** based upon, arising from or in any way related to **Professional Services** performed for or on behalf of any organization if, at any time when those services were performed, the organization was or was intended to be:

**(a)** directly or indirectly controlled, operated or managed by an **Insured**; or

**(b)** owned by an **Insured**, or by a spouse of any **Insured**, in a percentage which exceeds:

**(i)** five (5) percent of the issued and outstanding voting stock of the shares of a publicly traded organization; or

**(ii)** ten (10) percent of the legal and/or equitable ownership of organization

**(8)** In connection with any **Claim** made, directly or indirectly, by or on behalf of any employee, former employee of an **Insured** or applicant for employment.

**(9)** In connection with any **Claim** based upon, arising from, or in any way related to the performance or failure to perform any services other than a **Professional Service.**

**(10)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged

    **(a)** loss or misuse of an **Insureds** funds or assets

    **(b)** loss or misuse of a **Client Entity(ies)** funds or assets

    **(c)** loss or misuse of any other party's funds or assets

**(11)** In connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

    **(a)** antitrust activities

    **(b)** unfair trade practices

    **(c)** violation of any consumer protection laws

**(12)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged misappropriation of advertising ideas, style of doing business or trade secrets, service mark or infringement or violation of copyright, patent, trademark or any other intellectual property rights or laws by an **Insured**.

**(13)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged

    **(a)** sending of information by fax, text, email, or by any other means, where prohibited by law; or

    **(b)** telephone calls using an auto dialer or other automated system, or by any other means, where prohibited by law

**(14)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged negligent act, error or omission committed in connection with the performance or failure to perform **Professional Services** which results in or from any of the following:

    **(a)** the transmission of corrupting or harmful software code, including but not limited to, computer viruses, Trojan Horses, worms, spy-ware or malware;

    **(b)** the gaining of access to a person or entity's information utilized in e-commerce, e-mail and file transfers, by any person who is not authorized to gain such access.

    **(c)** the unauthorized access or unauthorized use of a person or entity's **Computer System**;

    **(d)** except for the coverage provided by **Insuring Agreement I (C), Personally Identifiable Information Liability**, the unauthorized access or unauthorized use of an **Insured's Computer System**;

    **(e)** except for the coverage provided by **Insuring Agreement I (C), Personally Identifiable Information Liability**, the unauthorized disclosure of nonpublic **Personally Identifiable Information**.

**(15)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged Wrongful **Act** which first occurred prior to the **Retroactive Date**.

**(16)** In connection with any liability assumed by an **Insured** under an indemnity, hold harmless or liquidated damages provision or similar provisions or agreements, but this exclusion does not apply to liability an **Insured** would have in the absence of such agreements.

**(17)** In connection with any **Claim** based upon, arising from, or in any way related to the actual or alleged sale or promotion of any securities or other investments including any actual or alleged violation of any securities laws or regulations.

**(18)** In connection with any **Claim** based upon or arising from or in any way related to any actual notarization, certification, or acknowledgment of a signature without the person making such signature in The **Insured's** physical presence at the time of said notarization, certification or acknowledgment.

**(19)** In connection with any **Claim** based upon, arising from or in any way related to feasibility studies, future market valuations or any promise, guaranty, representation or warranty, either expressed or implied, made by an **Insured**, pertaining to the future values of real property or investments.

**(20)** In connection with any **Claim** based upon, arising from or in any way related to the **Insured's** activities as a dual agent in real estate transactions where the **Insured** failed to fully disclose its dual agency status in writing to all parties and where all parties did not consent to the dual agency in writing.

**(21)** In connection with any **Claim** based upon, arising from or in any way related to actual or alleged discrimination, humiliation, harassment or misconduct by an **Insured** because of race, creed, color, age, gender, sex, sexual preference or orientation, national origin, religion, disability, handicap, marital status or any other class protected under federal, state, local or other law; however, subject to the annual aggregate limit stated below, this exclusion shall not apply to damages for alleged violations of Title VIII of the Civil Rights Act of 1968 [42 U.S.C. 3601 et seq.] or the Fair Housing Amendment of 1988 or any similar state or local law or ordinance prohibiting discrimination in housing: (hereinafter "Civil Rights damages"). In the event that the Limit of liability of the Policy is greater than $250,000, such Civil Rights damages shall be subject to an aggregate sub-limit of $250,000. This aggregate sub-limit is included within and not in addition to the applicable limits of liability and is subject to the retention stated in the Declarations. The aggregate sub-limit is the most we shall pay for all such Damages and Defense Costs for all **Claims** to which this insurance applies.

**(22)** In connection with any **Claim** based upon, arising from or in any way related to the formation, promotion, syndication, operation or administration of any property syndication, real estate investment trust or any corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling or maintaining real property including those syndication, trusts, real estate investment trusts, corporations, partnerships or joint ventures in which the **Insured** has, had or intended to have a participating interest directly or indirectly in the profits or losses thereof.

**(23)** In connection with any **Claim** based upon, arising from or in any way related to property developed, constructed, owned or to be purchased by any **insured** or by any entity in which any **Insured** has a financial interest, or by any entity coming under the same financial control as an **insured.**

**(24)** In connection with any **Claim** based upon, arising from or in any way related to the interests, operations or activities of any **Insured** as an insurance agent, insurance broker, lawyer, mortgage banker, asset manager, title agent, title abstractor, general contractor, construction manager or property developer.

**(25)** In connection with any Claim based upon, arising from or in any way related to any bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof.

This exclusion shall not apply to

**(a)** to any actual or alleged emotional distress, or mental anguish caused by Personal Injury

**(b)** bodily injury or property damage, including **LockBox Damage** and **Open House Damage** arising out covered **Real Estate Services** provided:

    **(i)** such services are not real estate property management services;

    **(ii)** such damages would not be afforded coverage under a standard comprehensive general liability policy, regardless of whether or not such coverage is in force at the time such bodily injury or property damage occurred;

    **(iii)** such damages would not be afforded coverage under a standard business owners policy, regardless of whether or not such coverage is in force at the time such bodily injury or property damage occurred;

**(iv)** there shall be no coverage for any **Claim** arising out of the ownership, maintenance, operation, use, loading, or unloading of any motor vehicle, aircraft or watercraft owned or operated by or rented or loaned to any **Insured**;

**(v)** there shall be no coverage for any **Claim** for which an **Insured** or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or similar law;

**(vi)** there shall be no coverage for any **Claim** for bodily injury to any employee of an **Insured** arising out of his or her employment by an **Insured** or to any obligation of an **Insured** to indemnify or contribute with another employer because of damaged arising out of such injury.

As a condition precedent to coverage under (b), the **Insured** agrees and warrants that comprehensive general liability insurance, including premises/operations, covering bodily injury and property damage in the amount of $1,000,000 applying to the named **Insured's** operations shall be kept in force during the **Policy Period.**

## V. NOTICE OF CLAIM

**(A)** As a condition precedent to coverage under this **Liability Coverage Part**, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after an **Insured** becomes aware of such **Claim**, but in no event later than:

**(1)** if this Policy expires (or is otherwise terminated) without being renewed with the Insurer, ninety (90) days after the effective date of said expiration or termination; or 90 days after the expiration of the last policy issued by this Insurer as a renewal of this policy, whichever is later; or

**(2)** the expiration of the Extended Reporting Period, if applicable;

provided, that if this Policy is cancelled for non payment of premium, the **Insured** will give to the Insurer written notice of such **Claim**, prior to the effective date of cancellation.

**(B)** If, during the **Policy Period**, the **Insureds** first become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently made which arises from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period,** and therefore subject to the terms and conditions of this Policy, including, without limitation, Section **VII., DEFENSE AND SETTLEMENT** of the Common Terms and Conditions and the reporting requirements set forth in this **Liability Coverage Part**, on the date that the Insurer receives the above notice.

**ENDORSEMENT NO:**3

**This endorsement, effective 12:01 am,** 5/15/22                                              forms part
**of policy number**     83 OH 0387133-22

**issued to:**           CHASE REAL ESTATE LLC

**by:**                  HARTFORD FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under:

**THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY INSURANCE POLICY**[SM]

Section **II. COMMON DEFINITIONS**, **Pollutants**, is deleted and replaced with the following:

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant, nuisance or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil product, radiation, asbestos or asbestos-containing product, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. Pollutants also means any substance located anywhere in the world identified on any applicable list of hazardous substances issued by any federal agency (including, nonexclusively, the Environmental Protection Agency) or any state, county, municipality or locality or counterpart thereof, or any foreign equivalent thereof.

Section **II. COMMON DEFINITIONS** is amended to include the following:

- "**Hostile Fire**" means one which becomes uncontrollable or breaks out from where it was intended to be.

Section **II. COMMON DEFINITIONS** the definition of "**Defense Costs,**" is deleted and replaced with the following:

- "**Defense Costs**" means:

    **(1)** reasonable legal fees and expenses including, but not limited to, e-discovery expenses incurred in the defense or appeal of a **Claim**;

    **(2)** the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds.

    However, **Defense Costs** shall not include:

    **(a)** salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds** or Insurer;

    **(b)** any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered **Insured**; or

    **(c)** any fees, expenses or costs which were incurred prior to the date on which the Insurer received written notice of **Claim** from the **Insured**.

Section **III. COVERAGE EXTENSIONS**, **(A) Spousal/Domestic Partnership Liability Coverage** is amended to include the following:

Any use of the terms "spouse", "relative", "family", "immediate family", "dependent", or any other term descriptive of spousal relationships used in this Policy, includes a party to a civil union as recognized under Illinois law.

**ENDORSEMENT NO:** 3

Section **II. DEFINITIONS, Domestic Partner** is deleted. All references to the term "Domestic Partner" throughout the Policy are deleted.

Section **VI. RETENTION**, paragraph **(E)**, is deleted and replaced with the following:

(E) If the **Insured** with the approval of the Insurer, agrees to resolve a covered **Claim** through binding arbitration, non-court ordered mediation, or other similar alternative dispute resolution process, the applicable retention amount will be reduced by 50% up to a maximum of $25,000.

Section **IX. Extended Reporting Period**, paragraph **(A)** is deleted and replaced by the following:

(A) If any **Liability Coverage Part** is cancelled or non-renewed for any reason, the **Insureds** shall have the right to elect an extension of time to report **Claims** under such **Liability Coverage Part** (the "Extended Reporting Period"). Where premium is due to the Insurer for coverage under this Policy, any monies received by the Insurer from the **Insured** as payment for the Extended Reporting Period coverage shall be first applied to such premium owing for this Policy. The Extended Reporting Period coverage will not take effect until the premium owing for this Policy is paid in full and unless the premium owing for the Extended Reporting Period coverage is paid promptly when due.

Section **XII. OTHER INSURANCE,** is deleted and replaced with the following:

If **Loss** arising from any **Claim** is insured under any other valid and collectible policy or policies, then the Insurer shall not be liable under this Policy for a greater proportion of such **Claim** than the applicable Limit of Liability stated in the Declaration page of this Policy bears to the total applicable limit of liability of all valid and collectible coverage against such **Claim,** unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number. Any payments made under any such policy(ies) will serve to offset any applicable retention amounts set forth in the Declarations.

All other terms and conditions remain unchanged.

Douglas Elliot, President

**ENDORSEMENT NO:**4

**This endorsement, effective 12:01 am,** 5/15/22                    **forms part**
**of policy number**      83 OH 0387133-22

**issued to:**          CHASE REAL ESTATE LLC

**by:**            HARTFORD FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS AMENDATORY ENDORSEMENT
## (COVERAGE PART)

This endorsement modifies insurance provided under:

**THE HARTFORD PREMIER CHOICE PROFESSIONAL LIABILITY INSURANCE POLICY**<sup>SM</sup>

The **Real Estate Agents PROFESSIONAL LIABILITY COVERAGE PART**, is amended as follows:

Section **III. DEFINTIONS** is amended as follows:

The definition of "**Damages,**" is amended to include the following:

- With respect to the insurability of punitive or exemplary damages in the State of Illinois, **Damages** does not include coverage for punitive or exemplary damages assessed as a result of the **Insured's** own misconduct. However, the Insurer shall pay **Defense Costs** for punitive and/or exemplary damages, which are incurred solely as a result of a **Claim** involving both (i) punitive and/or exemplary damages and (ii) compensatory damages.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

**ENDORSEMENT NO:** 5

This endorsement, effective 12:01 am, 5/15/22                                                              forms part
of policy number       83 OH 0387133-22

**issued to:**           CHASE REAL ESTATE LLC

**by:**                     HARTFORD FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## ILLINOIS CANCELLATION AND NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

The Cancellation provision of the Policy is deleted and replaced by the following:

NOTICE OF CANCELLATION

A.  The **Insured** may cancel this Policy by mailing to the **Insurer** advance written Notice of Cancellation stating when thereafter such cancellation shall be effective.

B.  If this Policy has been in effect for sixty (60) days or less, the **Insurer** may cancel this Policy by mailing to the **Insured** written Notice of Cancellation at least:

    1.  ten (10) days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or

    2.  thirty (30) days before the effective date of cancellation if the **Insurer** cancels for any other reason.

C.  If this Policy has been in effect for more than sixty (60) days, the **Insurer** may cancel this Policy only for one or more of the following reasons:

    1.  Nonpayment of premium;

    2.  The Policy was obtained through a material misrepresentation;

    3.  The **Insured** or other **Insured(s)** have violated any of the terms and conditions of the Policy;

    4.  The risk originally accepted has measurably increased;

    5.  Certification to the Director of Insurance of the loss of reinsurance by the **Insurer** which provided coverage to the **Insurer** for all or a substantial part of the underlying risk insured; or

    6.  A determination by the Director that the continuation of this Policy could place the **Insurer** in violation of the insurance laws of this State.

D.  If the **Insurer** cancels this Policy based on one or more of the above reasons except for nonpayment of premium, the **Insurer** will mail written Notice of Cancellation to the **Insured** at least sixty (60) days before the  effective date of cancellation. When cancellation is for nonpayment of premium, the **Insurer** will mail notice at least ten (10) days before the effective date of cancellation.

E.  The **Insurer** will mail the Notice of Cancellation to the **Insured** and the agent or broker at the last addresses known to the **Insurer**.

F.  Notice of Cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The **Policy Period** will end on that date.

G.  If this Policy is cancelled, the **Insurer** will send the **Insured** any premium refund due. If the **Insurer** cancels, the refund will be pro rata. If the **Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the **Insurer** has not made or offered a refund.

H.  The **Insurer** will maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

**ENDORSEMENT NO:** 5

The following provision is added:

<u>NOTICE OF NONRENEWAL</u>

A. If the **Insurer** decides not to renew this Policy, the **Insurer** will mail written notice stating the reason for non-renewal to the **Insured's** last mailing address known to the **Insurer** at least sixty (60) days before the expiration date of the Policy. A copy of the notice will also be sent to:

 1. The broker, if known to the **Insurer**, or the agent of record; and

 2. The last known mortgagee or lien holder at the last mailing address known to the **Insurer**.

B. This paragraph does not apply if the **Insurer** has manifested a willingness to renew directly to the **Insured**.


All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

# IMPORTANT INFORMATION FOR
# ILLINOIS POLICYHOLDER

IN THE EVENT YOU NEED TO CONTACT SOMEONE ABOUT THIS POLICY, PLEASE CONTACT YOUR HARTFORD PRODUCER. If you have additional questions, you may contact The Hartford at the address stated on the Declarations Page.

If you have been unable to contact or obtain satisfaction from your producer or from The Hartford's servicing office, Part 919 of the Rules of the Illinois Department of Insurance requires that The Hartford advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at:

ILLINOIS DEPARTMENT OF INSURANCE
Consumer Division
122 S. Michigan Ave., 19th Floor
Chicago, Illinois 60603

and in Springfield at:

ILLINOIS DEPARTMENT OF INSURANCE
Consumer Division
320 West Washington Street
Springfield, Illinois 62767

Written correspondence is preferable so that a record of your inquiry is maintained.

**PLEASE MAKE SURE TO INCLUDE YOUR POLICY NUMBER IN ANY CORRESPONDENCE.**

*Douglas Elliot*

Douglas Elliot, President



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully**.

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at — http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.



**Producer Compensation Notice**

You can review and obtain information on The Hartford's producer compensation practices at www.thehartford.com or at 1-800-592-5717.