UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Hartford Fire Insurance Company, | ) |
| Plaintiff, | ) |
| v. | ) No. 24-cv-8367 |
| | ) Judge April M. Perry |
| Chase Real Estate, LLC, Lori Mikosz, Marcin Chojnacki, and Robert Rixer, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Hartford Fire Insurance Company ("Hartford") initiated this declaratory judgment proceeding to determine its rights and obligations to Defendants Chase Real Estate, LLC ("Chase"), Lori Mikosz ("Mikosz"), Marcin Chojnacki ("Chojnacki"), and Robert Rixer ("Rixer") under an insurance policy (the "Policy") Hartford issued to Chase. Specifically, this case involves whether Hartford owes a duty to defend and indemnify Chase, Mikosz, Chojnacki, and Rixer based upon Policy 83 OH0387133, in effect from May 15, 2022, to May 15, 2023, for thirteen underlying federal lawsuits filed against Defendants (the "Underlying Suits"). Doc. 1 at 1–4.[1] Hartford now moves for summary judgment as to Counts I and IV of its complaint, arguing that two exclusions to coverage apply to the Underlying Suits. Docs. 92, 95. For the reasons that follow, the Court grants Hartford's motion for summary judgment.

---

[1] Defendants have suggested that other insurance policies between the parties may exist, and Hartford does not disagree. Moreover, additional parties have since filed lawsuits against these Defendants based on similar allegations. Neither of these facts changes that this declaratory judgment action was filed with respect to thirteen specific underlying lawsuits and one specific insurance policy. *See* Doc. 1 at 2–4. The Court's ruling therefore applies only to those thirteen suits and the specified insurance policy.

**BACKGROUND**

Hartford is an insurance company, and Chase is a real estate company. The insurance policy Hartford issued to Chase provided professional liability coverage for Chase's real estate agents. Doc. 93-3. Specifically, the Policy covered actual or alleged negligent acts, errors, or omissions of Chase's employees or independent contractors who performed real estate services. *Id.* at 16–19. Mikosz and Chojnacki are each alleged in the Underlying Suits to have held themselves out as real estate agents of Chase during the relevant time period. *See, e.g.*, Doc. 1-1 at 7, 33, 61, 90, 122, 155, 186, 217, 244, 282, 314, 341, 376.

The specific allegations in the Underlying Suits differ by complaint but generally involve allegations that the plaintiffs in the Underlying Suits were defrauded by Chase, Mikosz, Rixer, Chojnacki, and others when Chase and its agents made false representations about investment properties for the purpose of inducing the plaintiffs in the Underlying Suits to purchase those properties. In each of the Underlying Suits, the scheme is alleged to include false statements that the real estate sellers were unrelated third parties when in fact Defendants or their affiliates were the sellers of said properties. *See* Docs. 1-1, 76–83, 95-1. Some of the Underlying Suits also allege that Kathleen Long, Chojnacki's "paramour and roommate," participated in the alleged fraud as the ostensible owner of some of the properties at issue in the Underlying Suits. *See, e.g.*, Doc. 76 at 13; Doc. 78 at 10. The Underlying Suits do not raise the exact same claims but have significant overlap, with all including claims for conspiracy, common law fraud, negligent misrepresentation, and violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 ("RICO") and the Illinois Real Estate License Act (the "Real Estate License Act").

All but one of the Underlying Suits[2] also include claims of violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act").

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the party that bears the burden of proof must present facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor, this obligation does not extend to drawing inferences that are supported by only speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## ANALYSIS

The parties agree that Illinois law governs Hartford's duty to defend and indemnify. Under Illinois law, the duty to defend is only excused if "it is clear from the face of the [underlying] complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Int'l Ins. Co. v. Rollprint Packaging Prods.*, 728

---

[2] *Fernandez v. Deodar, Evergreen & Butternut EC LLC*, No. 1:23-cv-04406 (July 7, 2023 N.D. Ill.) (the "*Fernandez* suit") does not have a Consumer Fraud Act claim.

N.E.2d 680, 688 (Ill. App. Ct. 2000). The duty to defend "extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be." *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 28 (Ill. 1976); *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n.2 (Ill. 2010) ("[If the insurer] has a duty to defend as to at least one count of the lawsuit, it has a duty to defend in all counts of that lawsuit."). As for the duty to indemnify, "if an insurer owes no duty to defend, it owes no duty to indemnify." *Metzger v. Country Mut. Ins.* 986 N.E.2d 756, 761 (Ill. App. Ct. 2013).

"When construing the language of an insurance policy" to determine coverage, "a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Rich v. Principal Life Ins.*, 875 N.E.2d 1082, 1090 (Ill. 2007). The policy "is to be construed as a whole, giving effect to every provision" and "taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Id.* "If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy," particularly "with respect to provisions that limit or exclude coverage." *Id.* "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (internal citations omitted). Exclusions or limitations on coverage "are to be construed narrowly against the insured and in favor of coverage." *Country Mut. Ins. Co. v. Oehler's Home Care, Inc.*, 160 N.E.3d 977, 993 (Ill. App. Ct. 2019).

Defendants argue that summary judgment is inappropriate because at the very least the negligence claims raised in the Underlying Suits are within the scope of coverage. Hartford

argues that despite the fact there are negligence claims in the Underlying Suits, the financial interest exclusion and consumer protection law exclusion both bar coverage for all claims in the Underlying Suits.

### A. Financial Interest Exclusion

Count I alleges that Hartford has no duty to defend or indemnify Chase due to the Policy exclusion involving claims where an insured had a financial interest in the property (the "Financial Interest Exclusion"). Doc. 1 at 6. Under the Financial Interest Exclusion, the Policy excludes coverage:

> [i]n connection with any Claim based upon, arising from or in any way related to property developed, constructed, owned or to be purchased by any insured or by any entity in which any Insured has a financial interest, or by any entity coming under the same financial control as an insured.

Doc. 93-3 at 22. Hartford argues that a "financial interest" in an entity-owning property is broad, and requires only that an insured have some kind of "relationship to the property that has a monetary impact on the insured." *See JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 895 (Mo. Ct. App. 2004).[3] Hartford also argues that the language "in any way related" means that the underlying claims must "arise from the same course of conduct" that involves the property. *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 524–25 (7th Cir. 2022). Putting these interpretations together, Hartford concludes that all of the Underlying Suits are excluded from coverage because the claims in each Underlying Suit arise from and relate to an investment property sale scheme wherein at least one insured allegedly either owned the property or was part of an entity that would monetarily benefit from the sale of that property.

---

[3] Hartford represents that there is no Illinois precedent on point, which Defendants do not dispute with their own citations. Nor has the Court found any directly applicable Illinois cases.

Hartford's is a reasonable interpretation, consistent with the plain meaning of the Policy language. Moreover, as Hartford rightly argues, its interpretation makes sense in light of the broader purpose of the insurance contract. *See Rich*, 875 N.E.2d at 1090 (stating that insurance policy is to be construed by "taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract"). The Policy is a professional liability policy that generally covers negligent acts, errors, or omissions in an insured's performance of a professional real estate service. It makes sense that self-dealing would be excluded from coverage. The Court is not persuaded by Chase's argument that every real estate sale fits this definition because realtors always get commissions from sales. There is a significant difference between having a financial stake in the property itself and having a financial stake only in a successful sale of the property. Additionally, realtors who are also builders, developers, and owners bring far more litigation risk than do realtors engaging in standard arms-length transactions.

Although they claim the Financial Interest Exclusion is ambiguous, Defendants do not suggest a reasonable alternative interpretation. Chase notes that financial interest "can also mean the amount of equity an insured has in the property." Doc. 104 at 13. This is true so far as it goes, but to the extent Chase is suggesting a definition of "financial interest" that excludes any financial interest other than equity, Chase's interpretation is not reasonable as it is not consistent with the everyday meaning of "financial interest," and the Policy contains no such limiting language. The Court therefore does not find persuasive the argument that "financial interest" is ambiguous.

Interpreting "financial interest" as an interest that has a monetary impact on the insured, Hartford establishes that the Underlying Suits each involve such claims. Hartford attaches to its

memorandum a chart of citations for each Underlying Suit, listing the allegations that Defendants either directly owned relevant property or had a financial interest in entities that owned the relevant property. *See* Doc. 95-1. Chase does not argue that Hartford's chart is inaccurate. Chojnacki and Rixer argue that it is Hartford's obligation to prove that at least one Defendant had a financial interest in every property at issue in every Underlying Complaint, and then provide a string citation to properties where they argue there is not an allegation of such a financial interest. Doc. 108 at 7. However, while Chojnacki's and Rixer's string citation demonstrates that the properties at issue were not always directly owned by Defendants, other allegations in the Underlying Suits demonstrate that Defendants would still financially benefit from the sale of those properties within the definition of the Exclusion. For example, in the *Abbas* complaint, Chojnacki and Rixer note that the "Page Property" allegedly was owned by Chojnacki's "paramour and roommate." Doc. 108 at 7 (citing Doc. 1-1 p. 13 ¶ 71). But the *Abbas* complaint also alleges that Mikosz and Chojnacki "had already contracted to clandestinely buy the Page Property themselves for $145,000 less than what they would soon deceive the [underlying plaintiff] into paying for it." Doc. 1-1 p. 9 ¶ 41. This demonstrates that the Page Property was "to be purchased by any insured" as set forth in the Financial Interest Exclusion. Similarly, in the *Shankar* complaint, Chojnacki and Rixer note that the "Fairview Property" was owned by an entity rather than one of Defendants. Doc. 108 at 7 (citing Doc. 1-1 p. 246 ¶ 46).[4] However, a different paragraph in the *Shankar* complaint alleges that Chojnacki was one of the

---

[4] Despite Chojnacki's and Rixer's string citation, allegations that Defendants financially benefitted from the property sales through the entity owner appear in the other nine Underlying Suits. *Compare* Doc. 1-1 p. 32 ¶ 21, *with id.* ¶¶ 41, 51, 69 (*Haynes*); *compare* Doc. 1-1 p. 70 ¶ 93, *with id.* ¶¶ 94, 124-126 (*Michel*); *compare* Doc. 1-1 p. 92 ¶ 40, *with id.* ¶¶ 136-138 (*Chen*); *compare* Doc. 1-1 p. 124 ¶ 35, *with id.* ¶ 45 (*Hui*); *compare* Doc. 1-1 p. 157 ¶ 37, *with id.* ¶ 44 (*Said*); *compare* Doc. 1-1 p. 216 ¶ 16, *with id.* ¶ 17 (*Malik*); *compare* Doc. 1-1 p. 284 ¶¶ 49, 52, *with id.* ¶¶ 50, 59, 81, 150–52 (*Weiner*); *compare* Doc. 1-1 p. 313 ¶¶ 16–18, *with id.* ¶¶ 40–41, 86–88 (*Sor*); *compare* Doc. 1-1 p. 380 ¶ 69, *with id.* ¶ 222 (*Lin*). And Chojnacki and Rixer do not cite to the *Stafford* complaint at all, which the Court interprets as agreement of allegations of a financial interest in the properties at issue in that Underlying Suit.

owners or controllers of the selling entity. Doc. 1-1 p. 247 ¶ 49. As another example, in the *Fernandez* complaint, Chojnacki and Rixer cite paragraphs that allege the 3712 Deodar Street and 3910 Evergreen Street properties were owned by a non-defendant entity. Doc. 108 at 7 (citing Doc. 1-1 p. 185 ¶¶ 27–28). But in other paragraphs of the *Fernadez* complaint, the underlying plaintiffs allege that "Chojnacki signed both purchase contracts as 'Seller,'" Doc. 1-1 p. 189 ¶ 58, and that Chojnacki "owned the entities through [a] puppet company." *Id*. ¶ 73. For these reasons, the Court concludes that the Financial Interest Exclusion applies to each of the thirteen Underlying Suits.

### B. Consumer Protection Law Exclusion

Count IV alleges that Hartford has no duty to defend or indemnify Chase due to the Policy exclusion for claims involving violations of consumer protection laws (the "Consumer Protection Law Exclusion"). Doc. 1 at 10. Under the Consumer Protection Law Exclusion, the Policy excludes coverage:

> [i]n connection with any Claim based upon, arising from, or in any way related to any actual or alleged: . . . violation of any consumer protection laws

Doc. 93-3 at 21. Defendants do not dispute that the Consumer Fraud Act is a "consumer protection law" within the meaning of the Exclusion but argue the Exclusion nonetheless does not apply here. Specifically, Chase argues that a violation of the Consumer Fraud Act requires a finding the defendant knew of the falsity of the information provided, which Hartford has not proven. But Hartford need not do so—the Consumer Protection Law Exclusion does not require that Chase actually violated a consumer protection law, only that the underlying claim be "based upon" an "alleged" violation. And here, twelve of the thirteen Underlying Suits (excepting the

*Fernandez* suit) do allege a Consumer Fraud Act violation. *See* Doc. 1-1 at 22, 49, 79, 110, 142, 171, 232, 271, 302, 330, 361, 401.[5]

Defendants argue that even if some claims in the Underlying Suit are excluded under the Consumer Protection Law Exclusion, Hartford has a duty to defend so long as any claim is covered, which the negligent misrepresentation claims are. But the policy exclusion reaches more than just violations of a consumer protection law. It applies to any underlying "claim based upon, arising from, or in any way related to any actual or alleged . . . violation of any consumer protection laws." Doc. 93-3 at 21. The Seventh Circuit, interpreting similar insurance policy language, held that

> [t]he "arising out of" language excludes the underlying *conduct* that forms the basis of the violation of an enumerated law, even if liability for that underlying conduct might exist under a legal theory that is not expressly mentioned in the policy exclusion . . . . Stated differently, the "arising out of" phrase presents a "but-for" inquiry: if the plaintiff would not have been injured but for the conduct that violated an enumerated law, then the exclusion applies to *all* claims flowing from that underlying conduct regardless of the legal theory used.

*Zurich Am. Ins. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078–79 (7th Cir. 2021). Here, the claims in the Underlying Suits flow from alleged schemes to defraud the underlying plaintiffs by inducing them to purchase real property at inflated prices by misrepresenting facts about the properties. The same facts constitute the basis of the negligent misrepresentation claims and the Consumer Fraud Act claims. Moreover, even if there are some minor differences in the alleged conduct underlying the various claims, the Exclusion extends even further to claims "related to"

---

[5] Chase also argues more generally that summary judgment is premature because in order to determine coverage the Court will have to make factual findings that will impact the Underlying Suits. As this opinion demonstrates, however, no such findings are necessary, as coverage turns on the *allegations* in the Underlying Complaints. *See LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 933 (Ill. App. Ct. 1980) ("That the allegations are groundless, false or fraudulent is of no moment.").

any alleged consumer fraud, which all of the claims in the Underlying Suits do. The Consumer Protection Law Exclusion therefore absolves Hartford of any duty to defend or indemnify Defendants in all Underlying Suits but *Fernandez*.

As for *Fernandez,* Hartford argues that even though the complaint does not include a count alleging a violation of the Consumer Fraud Act, the factual allegations in the *Fernandez* complaint are similar to the factual allegations upon which the Consumer Fraud Act claims are based in the other Underlying Suits. This argument essentially reads "alleged . . . violation" to include not just lawsuits explicitly alleging a violation but also factual allegations which are the substantive equivalent of an alleged violation. Even if the latter is a reasonable interpretation of the exclusion, however, so too is the former. And among reasonable alternatives, an exclusion must be interpreted in favor of the insured. Therefore, the claims in *Fernandez* cannot fall under the Consumer Protection Law Exclusion on this basis.

Hartford next argues that *Fernandez* is covered by the Consumer Protection Law Exclusion because of the Real Estate License Act and RICO claims raised in the *Fernandez* complaint. The Court is not persuaded as to either. Illinois courts have read consumer protection exclusions in insurance contracts very narrowly, holding that "[c]onsumer protection laws are designed to protect the public—the *purchasers* of goods and services—against oppressive practices by merchants." *Evergreen Real Est. Servs., LLC v. Hanover Ins.*, 142 N.E.3d 880, 887 (Ill. App. Ct. 2019). The Real Estate License Act was not enacted for such purposes but is a "two-way street" from which both the real estate profession and purchasers of real estate derive a benefit. *See id.* at 887 ("[O]nly purchasers of goods and services derive direct benefit from consumer protection laws."); *see also* 225 ILCS 454/1-5 ("The intent of the General Assembly in enacting this statute is to evaluate the competency of persons engaged in the real estate

profession and to regulate their activities for the protection of the public."). By enacting the Real Estate License Act, the Illinois legislature provided a framework within which real estate professionals can practice, broadening the scope of the law beyond exclusively protecting consumers. Similarly, RICO was not enacted for an exclusive consumer protection purpose but "in order to halt the pernicious infiltration of organized crime into business enterprises." *NSC Int'l Corp. v. Ryan*, 531 F. Supp. 362, 363 (N.D. Ill. 1981). The Exclusion's reference to "consumer protection laws" might reasonably be interpreted to include laws being used for the purposes of consumer protection but could also reasonably be interpreted to only include those laws that are by their very nature consumer protection laws. Because exclusions are interpreted strictly against the insurer, Hartford cannot benefit from its interpretation.[6] For these reasons, the *Fernandez* suit is not covered by the Consumer Fraud Exclusion. However, as discussed above, the *Fernandez* suit is covered by the Financial Interest Exclusion and therefore summary judgment remains appropriate as to all thirteen Underlying Suits.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment on Counts I and IV in favor of Plaintiff.

Dated: November 26, 2025

_____
APRIL M. PERRY
United States District Judge

---

[6] To be clear: although it is not clear whether RICO and the Real Estate License Act constitute consumer protection laws, that does not render the Exclusion wholly inapplicable. Given that all of the parties agree that the Consumer Fraud Act constitutes a consumer protection law, the Exclusion can be narrowly applied in that respect. *See Gillen v. State Farm Mut. Auto. Ins.*, 830 N.E.2d 575, 582 (Ill. 2005) ("[A] policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific.").